IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GILBERT P. HYATT,                    )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )     Civil Action No. 1:20-cv-487
                                     )
UNITED STATES PATENT AND             )
TRADEMARK OFFICE, et al.,            )
                                     )
          Defendants.                )

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the parties' cross Motions for Summary Judgment.

Plaintiff is the named inventor on approximately 400 patent applications, nearly all of which were filed in 1995 or earlier. As originally filed, each of Plaintiff's applications contained up to 100 claims. Plaintiff has also repeatedly amended his applications. By August 2013, his interconnected applications contained a total of approximately 115,000 claims. Defendants, the U.S. Patent and Trademark Office ("USPTO") and Director, consider this amount "unprecedented" for any single applicant.

In August 2013, the USPTO began issuing Requirements in Plaintiff's applications. The Requirements recited the "confluence of multiple factors" that the USPTO claimed made Plaintiff's applications "unmanageable," including the following: (1) the

number of related pending applications, (2) the length of the specifications and number of applications incorporated by reference, (3) the number of claims, (4) the multiplication of claims over the course of prosecution, and (5) the similarity of claims. See Hyatt v. USPTO, 146 F. Supp. 3d 771, 778 (E.D. Va. 2015). Citing its need to more effectively examine Plaintiff's applications, the USPTO's Requirements instructed Plaintiff to select a number of claims from each of his twelve "families," identify the earliest possible priority date and supporting disclosure for each selected claim, and present a copy of the selected claims to the USPTO. Id.

The present Complaint challenges the USPTO's decisions applying two different regulations. In Count I, Plaintiff challenges the USPTO's decisions to dismiss as untimely Plaintiff's petitions in seventeen of his applications for the USPTO to withdraw holdings of abandonment. Any petition filed more two months after a holding of abandonment must include a terminal disclaimer, which shortens a patent term by the amount of time the applicant delayed in filing the petition (absent extraordinary circumstances). Plaintiff argues that his requests for reconsideration on the holdings of abandonment should have tolled the two-month deadline for him to file the petitions to withdraw until the USPTO adjudicated the requests for reconsideration. But because Plaintiff filed his petitions more than two months after

the holdings of abandonment and did not include terminal disclaimers, the USPTO dismissed the petitions.

In Count II of the Complaint, Plaintiff challenges the USPTO's decision holding one of his patent applications abandoned. The USPTO asserts that because Plaintiff shifted the subject matter of the claims in that application to a new invention, the examiner entered a "restriction requirement," which required Plaintiff to limit the application to single invention. See 35 U.S.C. § 121. The USPTO argues that by presenting the original claims first, Plaintiff constructively selected the invention in the original claims for examination. Plaintiff's amendment following the restriction requirement resulted in a holding of abandonment because the patent examiner had no remaining claims to the original invention left to examine.

Plaintiff argues that the USPTO regulation for transitional applications—those filed and pending in 1995 when the law changed—precludes the USPTO from issuing restriction requirements. But the USPTO found that one of the exceptions in the regulation for transitional applications applied, allowing it to issue a restriction requirement in Plaintiff's application.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes

over facts that might affect the ultimate resolution of the case will preclude the entry of summary judgment. Id.

Under the Administrative Procedure Act ("APA"), a court may only set aside an agency's actions if the actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In undertaking this review, a court "perform[s] only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." Holly Hill Farm v. United States, 447 F.3d 258, 263 (4th Cir. 2006) (internal quotations omitted). The standard of review is narrow and does not authorize a court "to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

I.

An applicant who has received notice of the USPTO's holding of abandonment of an application may file a petition under 37 C.F.R. § 1.181(a) for withdrawal of the USPTO's holding. An applicant must file a petition under 37 C.F.R. § 1.181(f) "within two months of the mailing date of the action or notice from which relief is requested may be dismissed as untimely, except as otherwise provided. This two-month period is not extendable."

The USPTO's Manual of Patent Examining Procedure ("MPEP")

4

§ 711.03(c)(I)(C)(1)(a) similarly states that "any petition to withdraw the holding of abandonment that is not filed within two months of the mail date of the notice of abandonment will not (absent extraordinary circumstances) be treated on its merits unless accompanied by a terminal disclaimer." The MPEP does not have the force of law, but courts may "take judicial notice of [a] provision to the extent it does not conflict with statutory text." In re Hubbell, 709 F.3d 1140, 1146 (Fed. Cir. 2013) (citing Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 964 (Fed. Cir. 2002)).

Each of Plaintiff's petitions to withdraw the holdings of abandonment in the patent applications identified in Count I of the Complaint was filed more than two months after the mailing date of the corresponding notice of abandonment. No petition included a terminal disclaimer, and none made any showing that delay was the result of extraordinary circumstances. Thus, the USPTO acted in accordance with both 37 C.F.R. § 1.181 and MPEP § 711.03(c)(I)(C)(1)(a) when it dismissed Plaintiff's petitions as untimely.

Plaintiff nonetheless argues the USPTO's decisions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. First, Plaintiff argues that the USPTO required him to seek reconsideration by the examiner prior to filing his petitions. Section 1.181(c) of 37 C.F.R. states that

"[w]hen a petition is taken from an action or requirement of an examiner in the ex parte prosecution of an application . . . it may be required that there have been a proper request for reconsideration (§ 1.111) and a repeated action by the examiner." The referenced 37 C.F.R. § 1.111 limits the scope of the reconsideration requirement to a "Reply by applicant or patent owner to a non-final Office action." Because a notice of a holding of abandonment is a final action, §§ 1.111 and 1.181(c) do not apply.

Plaintiff also relies on MPEP § 711.03 to support his argument that the USPTO mandated he file for reconsideration, which should have tolled the two-month limitation period. MPEP § 711.03 states that "[w]hen advised of the abandonment of his or her application, applicant may [] ask for reconsideration of such holding." The permissive language of this guidance creates no requirement for an applicant to seek reconsideration, and it provides no indication that the time to file a petition may be tolled during the reconsideration period. This suggests that an applicant who has received a notice of abandonment may request the examiner to reconsider the holding of abandonment, may file a petition for the USPTO to review its holding of abandonment, or both.

Second, Plaintiff argues that MPEP § 711.03(c)(I)(C)(1)(a) is not law and thus is nonbinding. This is true. But the USPTO derives the two-month deadline for filing a petition to withdraw a holding

of abandonment directly from 37 C.F.R. § 1.181(f). The MPEP's "provisions represent the PTO's interpretation of the statutes and regulations," Molins PLC v. Quigg, 837 F.2d 1064, 1067 (Fed. Cir. 1988).

Plaintiff also argues that the Court should apply a "general rule" that presumes tolling for requests for reconsideration. See ICC v. Locomotive Eng'rs, 482 U.S. 270 (1987). But this statement of law concerns tolling of the time to seek judicial review by a court of jurisdiction. It has no effect on the regulatory deadlines set for internal review processes within an agency. Instead, both the applicable regulation and the USPTO's guidance state that the two-month deadline is not extendable. 37 C.F.R. § 1.181(f); MPEP § 1002. The Court is unwilling to apply the tolling presumption of the judiciary in Locomotive Eng'rs to an executive agency's internal review process.

The Court finds no support in regulations, the USPTO's guidance, nor case law to toll the time for a patent applicant to file a petition to withdraw a holding of abandonment under 37 C.F.R. § 1.181(a). Plaintiff's petitions identified in Count I were filed more than two months after the mailing dates of the holdings of abandonment. They were not accompanied by terminal disclaimers and did not identify any extraordinary circumstances that would justify the delay in the absence of terminal disclaimers. The USPTO's decisions to dismiss those petitions as

untimely were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

II.

In Count II of the Complaint, Plaintiff argues that the USPTO impermissibly imposed a restriction requirement on a transitional application. A transitional application is one filed before but still pending during the 1995 legislative amendment to patent terms. Applicants have an interest in ensuring newly amended patent claims are governed under the more favorable pre-1995 patent regime. But Congress intended relief to applicants with patent applications pending in 1995 to be limited in nature. The rule for transitional applications is not an opportunity to begin the examination process anew while still retaining the ability to obtain a patent having a more favorable term that would run seventeen years from patent issuance.

The purpose of the procedure outlined in 37 C.F.R. § 1.129 "is to provide for further *limited* reexamination of an application pending two years or longer as of the effective date" of the legislation. H.R. 5110, 103rd Cong. § 532 (1994). In issuing and interpreting regulations for limited reexamination, the USPTO's position is entitled to "considerable deference." Morganroth v. Quigg, 885 F.2d 843, 848 (Fed. Cir. 1989).

Upon review of Plaintiff's '938 application, the USPTO examiner found that the claims originally submitted to the USPTO

8

were directed to "image processing of recorded frames of animated environments." In 2018, in response to a notice of abandonment, Plaintiff selected which claims the USPTO should examine and amended all claims. The USPTO examiner found that Plaintiff's amendments to the new set of selected claims shifted the subject matter of the application to "an independent and distinct species of computer systems and processes." This alleged shift to a new invention violated the USPTO's prior restriction requirement and left no originally presented claims for examination. For this reason, the examiner then held the application abandoned.

Under § 1.129(b)(1), the USPTO generally may not impart any restriction requirement on a transitional application. This limitation, however, does not apply if "[t]he examiner has not made a requirement for restriction in the present or parent application prior to April 8, 1995, *due to actions by the applicant*." § 1.129(b)(1) (emphasis added). Section 803.03 of the MPEP provides examples of such "actions by the applicant," including when

> [A]pplicant disclosed a plurality of independent and distinct inventions in the present or parent application, but delayed presenting claims to more than one of the disclosed independent and distinct inventions in the present or parent application such that no restriction requirement could be made prior to April 8, 1995.

If an applicant withheld claims to an invention disclosed in an application filed prior to June 8, 1995, and then later chooses

9

to add those claims through a § 1.129 submission, then the examiner had no opportunity in the first instance to place a restriction requirement on those claims previously withheld by the applicant.

Plaintiff failed to disclose claims to a separate invention and attempted to file them many years after 1995. Withholding these claims is an action by the applicant that falls within the § 1.129(b)(1)(ii) exception to the general rule prohibiting restriction requirements on transitional applications. The USPTO examiner was thus within his authority to impose a restriction requirement under the exception in § 1.129(b)(1)(ii).

Plaintiff argues that this interpretation of § 1.129(b)(1) conflicts with subsection (b)(2), which outlines procedures for review of an "application contain[ing] more than one independent and distinct invention." But the procedure in subsection (b)(2) applies only when "a requirement for restriction or for the filing of divisional applications cannot be made or maintained pursuant to this paragraph." In certain circumstances, the USPTO may not file a restriction requirement. In those cases, subsection (b)(2) could apply. In this case, however, the exception under subsection (b)(1) applies because Plaintiff's withholding of the claims in his original application denied the USPTO an opportunity to issue a restriction requirement. The interpretation of these subsections is not inconsistent.

Plaintiff next argues that "actions by the applicant" in §

1.129(b)(1)(ii) must have occurred "prior to April 8, 1995." But there is no support for such interpretation of this regulation. Section 1.129(b)(1)(ii) permits a restriction requirement where "[t]he examiner has not made a requirement for restriction in the present or parent application prior to April 8, 1995, due to actions by the applicant." The date refers to the examiner's action, not the applicant's.

Plaintiff's argument that the Court should consider the USPTO's previous actions that were inconsistent with the present interpretation is also unavailing. The regulation on its face permits the USPTO to issue a restriction requirement in Plaintiff's application. The Court need not inquire as to the agency's prior practices.

For these reasons, the USPTO's interpretation of 37 C.F.R. § 1.129(b) and its filing of a restriction requirement in the '938 application was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Lastly, Plaintiff asserts that 37 C.F.R. § 1.129(a), rather than subsection (b), should control his attempt to submit new claims to the '938 application. While subsection (a) permits submissions in qualifying applications that include claim amendments, subsection (b) contains the specific rules for making and maintaining restriction requirements in transitional applications. Nothing in subsection (a) references restriction

11

practice or otherwise overrides the more specific provisions of subsection (b).

Plaintiff argues that the USPTO's responses to public comments at the time of publication of the final rule for 37 C.F.R. § 1.129 should have some bearing on tis restriction practice in transitional applications. While an agency must consider and respond to comments from the public as part of notice and comment rulemaking, it is the final language of the rules adopted by the agency that controls. Again, the regulation is on its face unambiguous that the USPTO may issue a restriction requirement in Plaintiff's application.

Plaintiff next argues that the regulation does not limit the types of claim amendments an applicant is entitled to submit and have the USPTO consider on the merits. Though there is no limit on the type of amendments an applicant may include in a submission, § 1.129(a) does not limit an examiner's ability, after considering the merits of those amendments, to make a restriction requirement in accordance with § 1.129(b). Submission of amendments under subsection (a) does not immunize those amendments from the normal course of examination, including appropriate restriction under subsection (b).

For these reasons, the USPTO's interpretation of 37 C.F.R. § 1.129(a) to permit a restriction requirement in the '938 application was not arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law.

The USPTO is entitled to summary judgment in its favor as to all counts in the Complaint. An appropriate order shall issue.


CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 28 , 2021